UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

NKECHY EZEH,

        Defendant.

No. 1:25-CR-177

Hon. Hala Y. Jarbou
Chief Justice United States District Court Judge

_____/

## PLEA AGREEMENT

This constitutes the plea agreement between Nkechy Ezeh and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1. <u>Plea to Information.</u> Defendant gives up the right to Indictment by a grand jury and agrees to plead guilty to the Felony Information. Count 1 of the Felony Information charges Defendant with Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Sections 1349 and 1343. Count 2 of the Felony Information charges Defendant with Tax Evasion, in violation of Title 26, United States Code, Section 7201.

2. <u>Defendant Understands the Crimes.</u> In order for Defendant to be guilty of violating Count 1, the following must be true: (1) that two or more persons conspired, or agreed, to commit wire fraud; and (2) Defendant knowingly and voluntarily joined the conspiracy.

In order for Defendant to be guilty of violating Count 2, the following must be true: (1) Defendant had a tax due and owing; (2) Defendant made an affirmative attempt to evade or defeat the tax; and (3) Defendant acted willfully.

Defendant is pleading guilty because Defendant is guilty of the charges described above.

3. <u>Defendant Understands the Penalties</u>. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 1349 and 1343 is the following: 20 years of imprisonment, 3 years of supervised release, a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greater, and a mandatory special assessment of $100.

The statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7201, is the following: 5 years of imprisonment, 3 years of supervised release, a fine of $250,000, a mandatory special assessment of $100, and the costs of prosecution.

4. <u>Assessments</u>. Defendant agrees to pay the special assessments on the day of sentencing.

5. <u>Supervised Release Defined</u>. Supervised release is a period of time following imprisonment during which Defendant will be subject to various restrictions and requirements. Defendant understands that if she violates one or more of the conditions of any supervised release imposed, she may be returned to prison for all or part of the term of supervised release, which could result in the

Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

    6.    <u>Restitution and Payment of Taxes Owed</u>.

        a.    Defendant agrees to pay full restitution to all victims, including the Internal Revenue Service, in an amount to be determined at sentencing. Defendant agrees that the restitution order is not restricted to the victims or conduct alleged in the Counts to which Defendant is pleading guilty and includes (1) all losses caused by Defendant and reasonably foreseeable losses caused by her Co-Conspirators; and (2) all losses caused by Defendant's failure to report personal and business income to the IRS for calendar years 2017 through 2022. The United States believes the total amount of restitution for the conduct alleged in Count 1 will be $1,400,000, and the total amount of restitution to the IRS for the conduct alleged in Count 2 will be $390,174. The Court will determine the final amount of restitution at sentencing. Defendant understands and agrees that the tax restitution amount, no matter how it is resolved, will not include interest under 26 U.S.C. § 6601, or penalties, which will be assessed by the IRS pursuant to Title 26.

        b.    Defendant agrees that, however the restitution amount is resolved at sentencing, the total restitution amount will have resulted from Defendant's fraudulent conduct.

        c.    Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, Defendant agrees that

the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

        d.     The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). Defendant does not have the right to challenge the amount of this restitution-based assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor Defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment. Interest on the restitution-based assessment will accrue under 26 U.S.C. § 6601 from the last date prescribed for payment of the tax liability that is the subject of the restitution-based assessment to the date that the IRS receives full payment.

        e.     Defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. Defendant understands and agrees that the plea agreement does not resolve the Defendant's civil tax liabilities, that the IRS may seek additional taxes, interest, and penalties from Defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise Defendant's obligation to pay any remaining civil tax liability. Defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

      f.    Defendant understands that she is not entitled to credit with the IRS for any payment until the payment is received by the IRS.

      g.    Defendant agrees to make a complete and accurate financial disclosure to the IRS on forms prescribed by the IRS (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the IRS and the U.S. Attorney's Office any and all additional financial information and financial statements provided to the probation office. Defendant also agrees to provide the above-described information to the U.S. Attorney's Office and the probation office.

      h.    If Defendant makes a payment of the restitution agreed to in subparagraph (a) prior to sentencing, the payment will be applied as a credit against the restitution ordered. If Defendant makes a payment of the restitution agreed to in subparagraph (a) prior to sentencing, Defendant agrees that she will sign IRS Form 870, Form 2504, or other appropriate form enabling the IRS to make an immediate assessment of the liability underlying the restitution agreed to in subparagraph (a). Defendant agrees that she will not claim a refund of the payment or otherwise challenge the existence or amount of the tax liability underlying the restitution agreed to in subparagraph (a). If the amount of restitution identified in subparagraph (a) has not already been reduced to account for any such payments, the government agrees that the amount of the restitution to be ordered by the court shall be reduced by a payment made in conformity with this provision.

      i.    Defendant agrees to send all payments made pursuant to the Court's restitution order addressed to the Clerk of the Court, as follows:

> U.S. District Court, Clerk's Office
> 399 Gerald R. Ford Federal Building
> 110 Michigan Street, NW
> Grand Rapids, MI 49503

With each payment to the Clerk of the Court made pursuant to the District Court's restitution Order, defendant will provide the following information:

> i. Defendant's name and Social Security number;
>
> ii. The District Court and the docket number assigned to this case;
>
> iii. Tax year(s) or period(s) for which restitution has been ordered; and
>
> iv. A statement that the payment is being submitted pursuant to the District Court's restitution order.

Defendant agrees to include a request that the Clerk of the Court send the information, along with Defendant's payments, to the IRS address below:

> IRS - RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

Defendant understands and agrees that interest imposed by Title 26 will continue to accrue until the payment is actually received by the IRS. Defendant also agrees to send a notice of any payments made pursuant to this agreement, including the information listed in the previous paragraph, to the IRS at the preceding address.

    j.    Prior to sentencing, Defendant will file with the IRS Special Agent assigned to this investigation true and correct personal returns for the years

6

2017 -2022. Defendant agrees to provide the IRS, upon request, information regarding the years covered by the returns. Defendant further agrees to pay any additional amounts determined to be owing with respect to these returns because of any errors.

      k.    Defendant agrees not to file any claim for refund of taxes, penalties, or interest for amounts reported on the returns filed incident to this agreement.

      l.    Defendant agrees to forfeit to the United States the sum of $1,193,900, which represents the proceeds Defendant obtained as a result of her commission of the offense charged in Count 1 of the Felony Information. Defendant consents to the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p). Defendant acknowledges that the proceeds she obtained, directly or indirectly from the wire fraud conspiracy alleged in Count 1, were transferred, sold or deposited with third parties, or otherwise commingled with other property that cannot be divided without difficulty.

    7.    <u>Factual Basis of Guilt</u>. Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

      a. From at least 2017 through 2023, Defendant conspired with Sharon Killebrew and others to devise a scheme to defraud and obtain $1,400,000 from the Early Learning Neighborhood Collaborative (ELNC) and donors to ELNC, including the U.S. Department of Health and Human Service's Early Head Start Program and

7

other private donors, by means of false and fraudulent pretenses and representations. As part of the scheme, Defendant and other members of the conspiracy caused the transmission of wire communications that traveled in interstate and foreign commerce.

b. As part of the conspiracy, Defendant directed Sharon Killebrew, ELNC's Director of Finance and Administration, to generate approximately $470,100.00 in fictitious invoices for goods and services never received by ELNC and submit them to her for approval. Defendant approved the invoices on behalf of ELNC, causing ELNC to disburse fraudulent payments in grant money to Sharon Killebrew and her contracting business, Shared Blessings. At Defendant's direction, Killebrew kept a portion of the embezzled money for herself and sent the remainder to Defendant, PONA Consulting (Defendant's limited liability company), and other individuals at Defendant's direction.

c. As part of the conspiracy, Defendant directed Sharon Killebrew to generate approximately $536,235 in fictitious invoices payable to various individuals and entities for goods and services never received by ELNC and submit them to Defendant for approval. Defendant approved the invoices on behalf of ELNC, causing ELNC to disburse fraudulent payments in grant money to the various individuals and entities. At Defendant's direction, the various individuals and entities sent the misappropriated money to individuals located in Nigeria.

d. Defendant knew that she was prohibited by ELNC's bylaws and its grantors' rules from engaging in conflicts of interest and owning or operating a

8

business that ran preschools. She also knew that she had to report potential conflicts of interest to ELNC's Board of Directors. Nevertheless, Defendant created a Michigan non-profit corporation, Early Years Coalition ("EYC") and did not report her involvement with EYC to ELNC's Board of Directors.

e. As part of the conspiracy, and to conceal her involvement in EYC from ELNC and its Board of Directors, Defendant directed Sharon Killebrew to incorporate EYC and register it with the State of Michigan's Department of Licensing and Regulatory Affairs using the stolen identities of three individuals.

f. As part of the conspiracy, Defendant directed Sharon Killebrew to pay EYC $227,840 in ELNC grant money between in or about May 2022 and in or about August 2022, ostensibly to run preschools. In truth and fact, EYC did not operate preschools in the six months it was operational. Instead, Defendant caused EYC to pay $212,553.84 to herself, PONA Consulting (her limited liability company), and various other individuals and entities at her direction for work they did not perform.

g. Defendant created a new Michigan corporation, Global Open Learning and Development Preschools ("GOLD"), to run two preschools in Grand Rapids, Michigan. As part of the conspiracy, and to conceal her involvement in GOLD from ELNC and its Board of Directors, Defendant directed Sharon Killebrew to incorporate GOLD and register it with the State of Michigan's Department of Licensing and Regulatory Affairs using the stolen identities of three individuals. GOLD was never registered as a nonprofit organization under Section 501(c)(3) of the Internal Revenue Code.

h. As part of the conspiracy, Defendant directed Sharon Killebrew to pay GOLD with ELNC grant money. Between in or about November 2022 and in or about May 2023, Defendant caused GOLD to fraudulently pay $165,700 to herself, PONA Consulting, and other individuals and entities for goods and services they did not perform.

i. As part of the conspiracy, Defendant caused the transmission of wire communications that traveled in interstate commerce, including wire communications that originated in, traveled through, or ended in the Western District of Michigan.

j. To avoid paying taxes on the payments she received from ELNC, EYC, and GOLD, Defendant directed Killebrew and others not to reflect the payments as income to her on IRS Forms W-2 and 1099.

k. Defendant knew that she had taxes due and owing each year for tax years 2017-2022 and also knew that she was legally obligated to file truthful income tax returns for those tax years. Defendant willfully attempted to evade and defeat income tax due and owing for tax years 2017-2022 by, among other things, misappropriating funds from ELNC, EYC, and GOLD for personal purposes, and using Sharon Killebrew, Shared Blessings, PONA Consulting, EYC, and GOLD to conceal and obscure her true income and assets. The government's position is that the amount of tax due and owing for tax years 2017-2022 is as follows:

| Tax Year | Tax Due and Owing |
| --- | --- |
| 2017 | $67,244.00 |
| 2018 | $100,354.00 |
| 2019 | $61,673.00 |

| | |
|---|---|
| 2020 | $39,077.00 |
| 2021 | $48,757.00 |
| 2022 | $73,069.00 |
| | |
| Total | $390,174.00 |

8. **Cooperation in Criminal Investigations.** Defendant agrees to fully cooperate with the United States Department of Health and Human Services, the IRS, the U.S. Attorney's Office, and any other law enforcement agency in their investigation of the charges contained in the Felony Information, as well as the investigation of crimes over which they have actual or apparent jurisdiction. Defendant's cooperation will consist of all steps needed to uncover and prosecute such crimes, including, but not limited to, providing investigators with a full, complete and truthful statement concerning Defendant's knowledge of any and all criminal activity of which she is aware; truthfully answering investigators' questions; meeting with prosecutors before testifying; truthfully testifying before grand juries and in any court proceedings; and providing all relevant tangible evidence in Defendant's possession or under Defendant's control, including, but not limited to, objects, documents, and photographs. Defendant's obligation to cooperate under this paragraph is an affirmative one and includes the obligation to voluntarily come forward with any and all information which Defendant should reasonably know will assist in the investigation of other criminal activity. Defendant will not commit any criminal offense during the course of her cooperation with the United States. Defendant will submit to polygraph examination(s) upon request. Defendant's obligation under this paragraph is a continuing one, and shall continue after

11

sentencing until all investigations and prosecutions in which Defendant's cooperation is deemed relevant by the U.S. Attorney's Office have been completed.

9. <u>Acceptance of Responsibility</u>. The U.S. Attorney's Office agrees not to oppose Defendant's request for a two-level reduction of her offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

10. <u>Protection for the Proffered/Cooperative Statements</u>. The U.S. Attorney's Office agrees that information provided by Defendant through Defendant's proffer(s), and any information provided pursuant to Defendant's promise to cooperate as described in this agreement, will not be used by the Government to enhance Defendant's sentence, in accordance with Sentencing Guidelines § 1B1.8, and according to the terms of the written agreement entered into between the parties immediately prior to the proffer. It is expressly understood, however, that such information may be used by the Government at sentencing if Defendant takes a position at sentencing that contradicts information provided by Defendant pursuant to this agreement or any proffer agreement.

11. <u>Possibility of Sentence Reduction Motions</u>. The U.S. Attorney's Office will decide whether to file a motion for departure or reduction of sentence pursuant to Sentencing Guidelines § 5K1.1 and/or Rule 35(b) of the Federal Rules of Criminal Procedure. Defendant fully understands that such a motion may be made pursuant to law if, and only if, Defendant fully cooperates with the Government and materially and substantially assists the Government in the investigation or prosecution of others. The determinations of whether Defendant has provided substantial assistance to the United States, or to designated state or local law enforcement authorities, will be made in the sole discretion of the U.S. Attorney's Office. Defendant fully understands that this paragraph is not a promise by the Government to file a motion for departure or to reduce a sentence. Additionally, Defendant understands that, even if such a motion were filed, the Court has complete discretion to grant or deny the motion. Furthermore, if the Court were to grant the motion, the Court, not the Government, would decide how much of a sentence reduction Defendant receives based upon the nature and extent of Defendant's assistance. Defendant acknowledges and agrees that Defendant may not appeal the Court's exercise of its discretion in granting or denying a motion for departure or reduction of sentence, if such a motion is made.

12. <u>Non-Prosecution Agreement</u>. The U.S. Attorney's Office agrees to forbear from bringing criminal charges against Defendant's husband and her children.

13. <u>The Sentencing Guidelines</u>. Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing Defendant. Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Defendant understands that Defendant and Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement. Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

14. <u>Waiver of Constitutional Rights</u>. By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, Defendant would have had the following rights:

 a. The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

b.  The right to be presumed innocent and to have the burden of proof placed on the Government to prove Defendant guilty beyond a reasonable doubt.

c.  The right to confront and cross-examine witnesses against Defendant.

d.  The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e.  The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

f.  By pleading guilty, Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

15.  <u>Waiver of Appellate Rights</u>. Defendant gives up her right to directly appeal her conviction, sentence, or any other matter relating to this prosecution on any ground, except as to claims that the sentence exceeds the statutory maximum.

16.  <u>FOIA Requests</u>. Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

17.  <u>Hyde Waiver</u>.  Defendant acknowledges, by her voluntary admissions of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and Defendant hereby disclaims and waives any right to make any claim for attorney fees.

18.  <u>The Court is not a Party to this Agreement</u>.  Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed.  Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw her guilty plea, and she will remain bound to fulfill all of her obligations under this agreement. Defendant understands that no one—not the prosecutor, Defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

19.  <u>This Agreement is Limited to the Parties</u>.  This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority.  This agreement applies only to crimes committed by Defendant.  This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

20.  <u>Consequences of Breach</u>.  If Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or

16

all benefits to which Defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. Defendant further agrees to waive and forever give up her right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

21. <u>This is the Complete Agreement</u>. This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

22. <u>Deadline for Acceptance of Agreement</u>. If a copy of this agreement, executed by Defendant and defense counsel, is not returned to the U.S. Attorney's Office by **12/19/2025,** this agreement will be withdrawn automatically and will thereafter have no legal effect or force, unless the U.S. Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

|  |  |
|---|---|
|  | TIMOTHY VERHEY<br>United States Attorney |
| 12/17/25 | *[signature]* |
| Date | CLAY STIFFLER<br>Assistant United States Attorney |

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

|  |  |
|---|---|
|  | *NkechyEzeh*<br>box SIGN   4KPLQK6R-42Y6Z3V7 |
| Dec 16, 2025 |  |
| Date | NKECHY EZEH<br>Defendant |

I am Nkechy Ezeh's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

|  |  |
|---|---|
|  | *Takura Nyamfukudza*<br>box SIGN   178WZ564-42Y6Z3V7 |
| Dec 16, 2025 |  |
| Date | TAKURA NYAMFUKUDZA<br>Attorney for Defendant |